## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

TRISTAN J. HALL,

    Plaintiff,

v.

GREGORY S. MCMILLAN, JUDGE, FOURTH CIRCUIT COURT, KNOX COUNTY, TENNESSEE, and all other Defendants not yet known,

    Defendant.

Case No. _____

**JURY EMANDED, THIS IS THE FIRST APPLICATION FOR EXTRAORDINARY RELIEF.**

---

### COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF

---

COMES THE PLAINTIFF, TRISTAN J. HALL, by and through counsel, and for a cause of action against the Defendant would state as follows:

### PARTIES

1. Plaintiff, TRISTAN J. HALL ("Plaintiff"), is a citizen and resident of Knox County, Tennessee.

2. Defendant, GREGORY S. MCMILLAN, is duly licensed to practice law in the State of Tennessee (BPR No. 015581) and a full time Judge for the Fourth Circuit Court of Knox County, Tennessee, having been elected to serve in that position. Defendant may be served with process at the Knox County Fourth Circuit Court, City County Building, 400 Main Street, Knoxville, TN 37902.

3. Defendants not yet known to the Plaintiff consist of Co-Defendants that may have conspired with Judge McMillian in the illegal acts set forth herein and expedited discovery will be necessary to allow Plaintiff to obtain the names of these individuals.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction and venue over Plaintiff's claims brought pursuant to Title 42 of the United States Code section 1983-1988. *See* 28 U.S.C. § 1331, 1343(a)(3).

5.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to Title 28 of the United States Code section 1367.

6.     Venue exists in this Court pursuant to Title 28 of the United States Code section 1391.

## FACTS GIVING RISE TO CAUSE OF ACTION

7.     On July 31, 2020, Lauren N. Frontz ("Frontz") filed a Petition for Order of Protection (EXHIBIT A) and on August 3, 2020, the Fourth Circuit Court of Knox County, Tennessee entered a Temporary (*Ex Parte*) Order of Protection against the Complainant. (EXHIBIT A).

8.     Tennessee law requires "good cause" for the issuance of an *ex parte* order of protection; *see* Tenn. Code § 36-3-605(a).[1] "An immediate and present danger of abuse to the petitioner shall constitute good cause for purposes of this section." *Id.*

9.     On September 25, 2020, Complainant, *pro se*, filed a "Motion to Dissolve the Temporary (*Ex Parte*) Order of Protection for Lack of Good Cause." (T.R. Vol. I, at 29-33) (EXHIBIT B). Said Motion and subsequent related pleadings are instructive to this Complaint because they demonstrate how unnecessarily complicated the underlying case became and how questionable Defendant's actions were for no logical reason:

> Demonstrably, [] Frontz did not fear an immediate and present danger of abuse; *see,* **EXHIBIT**. Remarkably one (1) day prior to her *Petition*, [] Frontz was specifically advised by the Knoxville Police Department that she could pursue an order of protection; but instead, she stated that she "wanted to wait." Clearly, [] Frontz did not actually feel terrorized, frightened, intimidated, threatened, harassed, or molested; *see, TCA § 39-17-315.*

---

[1] "Upon the filing of a petition under this part, the courts may immediately, for good cause shown, issue an *ex parte* order of protection. An immediate and present danger of abuse to the petitioner shall constitute good cause for purposes of this section." *Tenn. Code § 36-3-605(a).*

The *Petition* further demonstrates lack of good cause. Therein, [] Frontz alleges that she is a victim of stalking. Notably, "stalking" requires repeated or continuing harassment; *id.* Intriguingly, however, [] Frontz does not allege any actual harassment; *see*, § 39-17- 308 (requiring a "threat of harm" for an offense of harassment to occur). She, in fact, does not allege any threats of illegal actions or communications that serve no legitimate purpose; *see*, *State v. Wiss*, No. M2012-01547- CCA-R3-CD, at *5 (Tenn. Crim. App. Mar. 26, 2014) ("Threats of illegal actions including, but not limited to, murder, arson, kidnapping, and assault serve no legitimate purpose"). She does not even allege any profanity or other conduct that would not be constitutionally protected; *see*, TCA *§ 39-17- 315 ("*Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose").

Instead, [] Frontz centers her complaint on [Complainant] contacting other persons (e.g., "Tristan contacted my ex-boyfriend"). Explicitly, harassment requires "conduct directed toward a victim;" *id.;* however, [] Frontz does not allege any occurrence of actual harassment (e.g., threats of harm), much less stalking, committed by [Complainant] and directed toward her; and, even to the extent that [] Frontz vaguely alleges the conduct of other persons (e.g., "fake numbers;" "other people"), not once does she allege that [Complainant] directed those other persons. Simply put, [] Frontz is a not a victim of stalking; she is merely angry that [Complainant] contacted other persons.

(T.R. Vol. I, at 30-31) (emphasis original).

10. On October 9, 2020, Complainant, *pro se,* filed "Response and Objections" (T.R. Vol. I, at 49-73, Exhibit C) wherein he argued that Frontz had obtained the *ex parte* order of protection inappropriately:

In her *Petition* to this court, [] Frontz was specifically asked "ON WHAT DATE(S) DID THE EVENT(S) OCCUR?" In response, [] Frontz explicitly stated, "ON GOING SINCE 07/21/2020." That statement was patently false. [] Frontz omitted that she had, in fact, met with [Complainant] for approximately three (3) hours at Parkside Grill on the evening of July 25, 2020 (*Verified Complaint* at ¶ 13); thus, any alleged harassment and/or stalking could not have been "ON GOING SINCE 07/21/2020.

(T.R. Vol. I, at 49-50).

11. Additionally, on October 14, 2020, Complainant, *pro se*, filed a "Notice of Filing" and supplemental phone records (T.R., Vol. I, at 77-79) (SEE EXHIBIT C) demonstrating that he and

Frontz had communicated almost daily up until July 29, 2020 -- in stark contrast to Frontz' claim of stalking since "07/21/2020." Specifically, Complainant also cited Tenn. R. Civ. P. 9.06 ("For the purpose of testing the sufficiency of a pleading, averments of time and place are material, and shall be considered like all other averments of material matter.").

12. All of the aforesaid pleadings were properly noticed and timely filed pursuant to the Tennessee Rules of Civil Procedure. Frontz, who was then represented by original counsel, did not object or file a response, nor did Frontz file a motion to strike or quash the notice of hearing.

13. *Swonger v. Swonger*, No. E2015-01130-COA-R3-CV (Tenn. Ct. App. Apr. 28, 2016) is of particular importance to this Complaint. In *Swonger*, Defendant was personally vacated by the Tennessee Court of Appeals for entering an indefinite order of protection; and therefore, with certainty, Defendant had judicial notice that indefinite orders of protection violate Tennessee statutes and law. *Swonger* also makes clear that, "at a hearing following entry of an *ex parte* order of protection, a trial court has only two options: (1) to dissolve the *ex parte* order of protection; or (2) to extend the order of protection for a definite period not to exceed one year." *Id. at *8;* (emphasis added). The same requirement is also statutory; *see* Tenn. Code § 36-3-605(b). [2]

14. During the hearing on October 16, 2020, Defendant candidly agreed with Complainant and stated, "reaching out to third parties isn't stalking or harassing." (T.R. Vol. II, at 225) (See Exhibit D). However, Defendant declined either option pursuant to *Swonger* and blatantly refused to hear or consider Complainant's Motion to Dissolve, stating: "I don't dissolve *ex parte* orders; I have trials on them." (T.R., Vol. II, at 226).

---

[2] "Within fifteen (15) days of service of such order on the Defendant under this part, a hearing shall be held, at which time **the court shall either dissolve any *ex parte* order that has been issued**, or shall, if the petitioner has proved the allegation of domestic abuse, stalking or sexual assault by a preponderance of the evidence, extend the order of protection for a definite period of time, not to exceed one (1) year, unless a further hearing on the continuation of such order is requested by the Defendant or the petitioner; in which case, **on proper showing of cause**, such order may be continued for a further definite period of one (1) year, after which time a further hearing must be held for any subsequent one-year period." *Tenn. Code § 36-3-605(b)* (emphasis added).

15.  Indeed, an order of protection which is entered ex parte must be set for hearing on the merits within 15 days of its issuance. Defendant failed to do this and by statute the order of protection expired by operation of law removing jurisdiction from this Defendant as to any further hearings. All further hearings the Defendant conducted thereafter, as fully set forth herein, was Ultra Vires – without jurisdiction, and as such Defendant has no immunity from same.

16.  The above-described conduct, actions and/or inactions of Respondent as set forth herein in Count I constitute violations of the Tennessee Code of Judicial Conduct, specifically: **(1)** RJC 1.1, **(2)** RJC 1.2, **(3)** RJC 2.2, **(4)** RJC 2.5(A), **(5)** RJC 2.6(A) and **(6)** RJC 2.7 as set forth hereinafter in paragraph **Error! Reference source not found.**.

17.  In addition, the above-described conduct, actions and/or inactions of Respondent as set forth herein in Count I constitute violations of the Tennessee Rules of Professional Conduct, specifically **(1)** RPC 3.2, **(2)** RPC 3.4(c), **(3)** RPC 8.4(a) and **(4)** RPC 8.4(d) as set forth hereinafter in paragraph **Error! Reference source not found.**.

18.  On September 25, 2020, Complainant, *pro se*, filed his first motion (T.R. Vol. I, at 17-26) to obtain his attorney/client work product that was erroneously given to the court:

> The phone records of [] Frontz were originally subpoenaed in Knox County General Sessions Court by [] Former Counsel for defense of [] Frontz' harassment charge against the [Complainant]. Shortly thereafter, the harassment charge was dismissed, and Former Counsel surrendered those records along with related attorney/client work product to the General Sessions Court. Subsequently, Former Counsel re-subpoenaed those records from General Sessions Court so that they may be used in this case. Since then, said phone records and attorney/client work product have been in the possession of this court. **To date, [Complainant] has not reviewed said records or attorney/client work product.**
>
> … **Said records are material to this case; and [Complainant] expects them to be exculpatory.** Moreover, only [Complainant] is entitled to the attorney/client work product this court currently possesses.

… [A] client is entitled [to] any work product prepared by the lawyer for the client and for which the lawyer has been compensated;" *Tenn. Rules of Prof. Conduct 1.16(d)(4).*

(T.R. Vol. I, at 17-18) (emphasis added).

19. During the hearing on October 16, 2020, Defendant agreed with Complainant and stated, "You're entitled to it. You are his client." (T.R. Vol. I, at 134).

20. However, on November 30, 2020, notably after Frontz substituted counsel (T.R. Vol. I, at 80-81) and Opposing Counsel[3] appeared, Defendant entered an Order (T.R. Vol. I, at 99-101), without conclusions of law, denying the return of Complainant's attorney/client work product and making it available to other persons which is an administrative action not judicial:

> Accordingly, **the Court will direct his administrative assistant to review, in camera, the phone records on said thumb drive** to make recommendation to the Court as to which phone records meet the criteria set forth herein. Thereafter, the Court will release those limited numbers to [Complainant] **with copy to [Frontz'] counsel**. All other requests in said motion are denied.

(T.R. Vol. I, at 99) (emphasis added).

21. On December 1, 2020, Complainant, *pro se*, filed a second motion (T.R. Vol. I, at 104-106) to obtain his attorney/client work product:

> On October 16, 2020, both parties appeared before this Court and there was discussion about a thumb drive. The thumb drive is being held in a sealed envelope by the Court. The contents of the thumb drive are work product of attorney Robert Kurtz from a criminal case in which he represented the [Complainant]. **The attached email from Kurtz demonstrates that this is his work product on the** thumb drive when he highlighted and took notes of [Complainant's] and [Frontz'] phone records. There may also be other attorney/client communications, notes, etc.

(T.R. Vol. I, at 104) (emphasis added).

22. That same day, Complainant, *pro se*, filed another motion (T.R. Vol. I, at 133-135) to set Opposing Counsel's objection (T.R. Vol. I, at 95-96) for hearing:

---

[3] All appearances of "Opposing Counsel" herein collectively refer to Douglas J. Toppenberg and Toby R. Carpenter.

… Simply put, it does not matter whether the thumb drive contains [Frontz'] entire file or nothing more than pictures of cats, only [Complainant] is entitled to it; and it would be a clear abuse of discretion for this Court to obstruct [Complainant's] access.

Moreover, [Complainant] himself has not seen the contents of said thumb drive, [] and **it may contain other materials (i.e., subject matter attorney/client communications, notes, etc.).** … it is unfathomable that the Court would even consider allowing anyone other than [Complainant] access to constitutionally protected, attorney/client confidential material.

(T.R. Vol. I, at 134) (emphasis added).

23. Upon information and belief, at some point thereafter, Defendant instructed his assistant, Rachel King, to review said thumb drive and work product and it was copied and made available to Opposing Counsel but not Mr. Hall.

24. On December 10, 2020, Complainant was notified by Ms. King that a disc was available for him to pick up at the Knox County Fourth Circuit Court Clerk's office. The disc that Complainant received contained only a limited amount of Complainant's work product. Opposing counsel, however, was provided the entire file, upon information and belief, before the redacted file was provided to the Plaintiff – this was also administrative and not judicial.

25. On December 11, 2020, a hearing took place and said thumb drive and work product were again addressed. (*Transcript of December 11, 2020, Proceeding,* at 26-29).[4] Defendant admitted, "the work product is contained on the thumb drive," (*id*. at 27); however, Defendant again refused to surrender said thumb drive to Complainant, stating "you have access to the relevant information." (*Id*. at 28).

26. Later, during the March 23, 2021, hearing, Defendant admitted that he had, in fact, provided the entirety of said thumb drive to Opposing Counsel:

---

[4] *Transcript* not on appellate record; located in "Other" folder.

I can answer that, Counsel. My administrative assistant did not understand the assignment, and copied all of the records onto the disk rather than just the days and times and periods that I had specified. She prov- -- she had burned a copy for you and a copy for Mr. Toppenberg. When she called and informed that they were ready, his office came and got them, looked at them, realized they were done. He brought his copy back. **She destroyed your copy**. …

**I am intimately familiar with what happened there.** [5]

(T.R. Vol. X, at 4) (emphasis added).

27.   As of filing this Complaint, said thumb drive remains under seal and in Defendant's possession; and Complainant has never received nor seen the entirety of its contents. Specifically, despite the fact that Plaintiff's counsel requested the same to be sent to the Court of Appeals as part of his designation of record, it was not sent – this was administrative not judicial.

28.   The above-described conduct, actions and/or inactions of Respondent as set forth herein in Count II constitute multiple violations of the Tennessee Code of Judicial Conduct, specifically: **(1)** RJC 1.1, **(2)** RJC 1.2, **(3)** RJC 2.2 and **(4)** RJC 2.5(A), as set forth hereinafter in paragraph **Error! Reference source not found.**.

29.   In addition, the above-described conduct, actions and/or inactions of Respondent as set forth herein in Count II constitute multiple violations of the Tennessee Rules of Professional Conduct, specifically: **(1)** RPC 3.4(a), **(2)** RPC 3.4(c), **(3)** RPC 4.4(b), **(4)** RPC 8.4(a), **(5)** RPC 8.4(b) and **(6)** RPC 8.4(d), as set forth hereinafter in paragraph **Error! Reference source not found.**.

---

[5]  While not presented as an alleged charge in this Complaint, it must be noted that Defendant's statements, set forth in paragraph 26, were testimonial. At that moment Opposing Counsel had been placed under oath and was on the stand testifying under the examination of Complainant's Counsel. Responded interjected Opposing Counsel's response, and then proceeded to provide his own personal account for those matters. *See* RJC 2.11(A)(2)(d).

30.   Further, the above-described conduct, actions and/or inactions of Respondent as set forth herein in Count II constitute a criminal offense of Tenn. Code § 39-16-503(a)(1), as set forth hereinafter in paragraph **Error! Reference source not found.**.

31.   On November 4, 2020, Defendant entered a bridging *ex parte* order of protection. (T.R. Vol. I, at 82-83).  Notably, said Order provides "to be determined by counsel" instead of a definite period of time, and is not signed by either Complainant or Opposing Counsel.

32.   As stated above, *Swonger, supra,* is of particular importance to this Complaint. In *Swonger*, Defendant was personally vacated by the Tennessee Court of Appeals for entering an indefinite order of protection:

### Appeal from the Circuit Court for Knox County
### Nos. 128217, 129498 Gregory S. McMillan, Judge

…

Husband contends that … indefinitely extending the existing order of protection was void because the trial court was constrained to grant only those remedies available pursuant to Tennessee Code Annotated §§ 36-3-601, *et seq*., the statutes concerning orders of protection. … We agree with Husband.

…
… no authority provides for the issuance of a permanent, open ended order of protection.

Tennessee Code Annotated § 36-3-601, *et seq*., provides the statutory framework pertaining to orders of protection. This statutory scheme contains sections mandating that a definite time frame be specified for such orders.

…

Likewise, Tennessee Code Annotated § 36-3-608 provides: (a) All orders of protection shall be effective for a <u>fixed period of time, not to exceed one (1) year.</u>

…

For the foregoing reasons, we vacate the trial court's issuance of a permanent, open-ended order of protection.

- 9 -

*Swonger, supra* (emphasis original).

33. Irrefutably, Defendant actually knew that an indefinite order of protection was unlawful; and yet he entered an indefinite order of protection in the underlying case.

34. Moreover, Defendant cannot deny that he blatantly disregarded the law because he admitted to doing so: "I entered another bridging order that was **_indefinite_** in time." (T.R. Vol. IV, at 147 (emphasis added) (Transcript of Proceedings Feb.5, 2021) (Exhibit O). Likewise, Opposing Counsel stated the same. (T.R. Vol. IV at 24).

35. Defendant may contend that said Order was entered "per agreement of counsel" (T.R. Vol. IV, at 147); however, "no authority provides for the issuance of a permanent, open ended order of protection;" *Swonger*, *supra* at *7. Period. Further, there is no indication that said Order was agreed; *see* Tenn. Code Ann. § 36-3- 609(a).[6] With certainty, the Order was **not signed** by either party and does not contain a certificate that it **was** served. Moreover, the Knox County Fourth Circuit Court Clerk's office has no record of the November 4, 2020, hearing; there are no video or audio recordings of said hearing, and no entry of said hearing in the Rule Docket.

36. The above-described conduct, actions and/or inactions of Respondent as set forth herein in Count III constitute multiple violations of the Tennessee Code of Judicial Conduct, specifically: **(1)** RJC 1.1, **(2)** RJC 1.2, **(3)** RJC 2.2, **(4)** RJC 2.3(A), **(5)** RJC 2.5(A), **(6)** RJC 2.7, **(7)** RJC 2.8(B) and **(8)** RJC 2.11(A), as set forth hereinafter in paragraph **Error! Reference source not found.**.

37. In addition, the above-described conduct, actions and/or inactions of Respondent as set forth herein in Count III constitute multiple violations of the Tennessee Rules of Professional

---

[6] "If the Defendant has been served with a copy of the petition, notice of hearing, and any *ex parte* order issued pursuant to § 36-3-605(c), any subsequent order of protection shall be effective when the order is entered. For purposes of this section, an order shall be considered entered when such order is **signed by**: (1) The judge and **all parties or counsel**; (2) The judge and **one party or counsel** and contains a certificate of counsel that a copy of the proposed order has been served on all other parties or counsel; or (3) The judge and contains a certificate of the clerk that a copy **has been served** on all other parties or counsel." *Tenn. Code § 36-3-609(a)* (emphasis added).

Conduct, specifically: **(1)** RPC 3.4(c), **(2)** RPC 8.4(a) and **(3)** RPC 8.4(d), as set forth hereinafter in paragraph **Error! Reference source not found.**.

38.    Further, the above-described conduct, actions and/or inactions of Respondent as set forth herein in Count III constitutes criminal offenses of Tenn. Code §§ 39-16-403(a)(1) and (2), as set forth hereinafter in paragraph **Error! Reference source not found.**.

39.    On October 9, 2020, Frontz filed her first motion for continuance, seeking delay for nearly two months until December 4, 2020. (T.R. Vol. I, at 47-48). Complainant objected, citing *Luker v. Luker*, 578 S.W.3d 450 (Tenn. Ct. App. 2018). (T.R. Vol. I, at 47-48). Then during the October 16, 2020, hearing, Complainant further argued:

> *Luker* states explicitly that a temporary order of protection cannot be extended for discovery requests made by the petitioner. The exact wording is, "A petitioner cannot extend the *ex parte* order of protection beyond the 15-day limit by requesting discovery."

> … "It is only a Defendant who has the ability to request a hearing be postponed to allow for discovery with the *ex parte* order." …

(T.R. Vol. II, at 229).

40.    Defendant initially denied Frontz' requested continuance and scheduled trial on November 5, 2020. However, after Opposing Counsel appeared everything changed: on November 4, 2020, directly before trial, Opposing Counsel requested another continuance, which Defendant granted; and, simultaneously, Defendant entered the aforesaid indefinite order of protection (which, as discussed earlier herein in Count III, was unlawful and void).

41.    On December 4, 2020, Complainant, *pro se*, filed a "Motion to Set an Immediate Trial Date; or, in the Alternative, Dissolve the Temporary (*Ex Parte*) Order of Protection" (T.R. Vol. I, at 137-141); and noticed said Motion for hearing on December 11, 2020. Of particular importance, said Motion states: "[Complainant] is ready to proceed to trial, even if he must do so without

discovery or the assistance of counsel, in effort to resolve this case and simply move forward."

(T.R. Vol. I, at 140).

42. During the December 11, 2020, hearing, the following pertinent exchange occurred:

> [Defendant]: … [Frontz] is not even here to offer testimony in defense against your motion to dismiss.
>
> …
>
> [Complainant]: … we have had three bridging orders so far and this case has prolonged for five months. That is the urgency that I have today.
>
> [Defendant]: The Court sits here ready to try this case at any point.
>
> [Complainant]: I'm ready. I'm ready today, Judge, if they want to go to trial right now.
>
> [Defendant]: Mr. Toppenberg, are you ready to go to trial on this case today?
>
> [Opposing Counsel]: **I'm not, Your Honor. … we have engaged the services of an expert witness that -- who is going to need until the end of January to be ready.**
>
> …
>
> [Defendant]: February 5th is my first open day …
>
> [Complainant]: If that's the first day, I suppose I have to take it. But again, I would have to object just for the amount of delay that we've already had, Judge.

*(Transcript of December 11, 2020, Proceeding,* at 10-16) (emphasis added).

43. "[I]t [was] only [Complainant] who [had] the ability to request that the hearing be postponed to allow for discovery with the *ex parte* order of protection remaining in effect." *Luker, supra.* "The prompt hearing requirement limits the potential for abuse by protecting Defendants from possible ongoing frivolous or retaliatory *ex parte* protective orders." *Kite v. Kite*, 22 S.W.3d 803, 806 (Tenn. 1997). Notably, during the earlier October 16, 2020, hearing, Defendant had stated, "the *ex parte* order of protection shall remain in effect through the new hearing, at which

point it will be dissolved or extended." (T.R. Vol. II, at 232). Also, Frontz failed to appear on December 11, 2020. (*Transcript, supra,* at 10).

44.　Regardless of those facts, Defendant granted Opposing Counsel's requested continuance (*Transcript, supra,* at 15-16) and the indefinite order of protection remained, blatantly violative of *Luker* and *Kite*. Thereafter, Opposing Counsel was allowed to control the proceedings.[7]

45.　The above-described conduct, actions and/or inactions of Respondent as set forth herein in Count IV constitute multiple violations of the Tennessee Code of Judicial Conduct, specifically: (**1**) RJC 1.1, (**2**) RJC 1.2, (**3**) RJC 1.3 (**4**) RJC 2.2, (**5**) RJC 2.3(A), (**6**) RJC 2.4(B), (**7**) RJC 2.5(A), (**8**) RJC 2.7, and (**9**) RJC 2.11(A), as set forth hereinafter in paragraph **Error! Reference source not found.**.

46.　In addition, the above-described conduct, actions and/or inactions of Respondent as set forth herein in Count IV constitute multiple violations of the Tennessee Rules of Professional Conduct, specifically: (**1**) RPC 3.2, (**2**) RPC 3.4(c), (**3**) RPC 8.4(a), and (**4**) RPC 8.4(d), as set forth hereinafter in paragraph **Error! Reference source not found.**.

47.　On February 2, 2021, Opposing Counsel filed a "Motion to Allow Expert Witness Testimony by Video." (T.R. Vol. III, at 321-330).

48.　The next day, on February 3, 2021, notably at 3:42 p.m., Opposing Counsel filed a "Notice of Expedited Hearing" (T.R. Vol. III, at 331-332), setting the aforesaid Motion for hearing the following morning at 8:30 a.m.

49.　Said Notice purports that Opposing Counsel did not serve Complainant or his counsel: [8]

---

[7] As discussed hereinafter, Defendant effectively allowed Opposing Counsel to delay trial indefinitely, have motions heard regardless of timeliness and notice requirements, communicate *ex parte* with Defendant, and ultimately rack up a clearly excessive amount ($77,525.75) of attorney fees.

[8] As discussed hereinafter, even had Opposing Counsel served said Motion or Notice, neither were timely.

> I personally delivered a copy of this motion to Darren Berg's office. The front door of the building was locked and I rang the doorbell and knocked several times. There were no cars in the parking lot and I couldn't see any lights on the inside. I taped an envelope with the motion copy on the front door.

(T.R. Vol. III, at 332).

50.    The next morning, on February 4, 2021, without the presence or knowledge of Complainant or Complainant's Counsel, Defendant conducted an *ex parte* hearing, and the following exchange took place:

> [Defendant]: We are here today pursuant to a notice of expedited hearing that was filed February 3rd, and it gave notice to Mr. Berg that there would be a hearing today, February 4th, at 8:30 a.m., on Mr. Toppenberg's motion filed February 2nd asking to allow the testimony of his expert by Zoom. …

> Pursuant to this Court's authority under the Rules of Civil Procedure, the Court deemed it necessary to have this hearing on an expedited basis, waived the five days notice …

> The Court having review the motion and reviewed the facts asserted therein and [] Mr. Berg having failed to respond or appear today at the hearing that was notice on Mr. Toppenberg's motion, the Court makes the following finding of facts based on that motion: … the Court will allow his testimony and cross-examination to occur by Zoom at the trial of this case tomorrow beginning at 9 a.m. …

> Mr. Toppenberg you'll prepare an order?

> [Opposing Counsel]:  I will. … and I presume the Court knows that Mr. Hall is in custody. [9] So I'm not really sure how the hearing is going to proceed tomorrow, but I would like to be able to tell Dr. Leonard he could appear a little later in the day.

> [Defendant]: What do you mean? Here's the key, Doug. What do you mean by "a little bit later in the day"? …

---

[9]  It is important to note that Complainant's arrest was based solely on charges that Opposing Counsel personally obtained, in retaliation for complaints filed against them with the Board of Professional Conduct (explicitly, the charging instruments state said BPR complaints). It is also important to note that immediately after Complainant's arrest, --**on the same day of the *ex parte* hearing**-- Opposing Counsel filed a plethora of pleadings, approximately sixty-seven (67) pleadings and hundreds of pages, that by volume alone was clearly planned and blatantly violative of RPC 4.4, in Knox County First Circuit Court (case no.1-299-20), wherein Complainant has filed suit against Frontz.

[Opposing Counsel]: Well, he asked for noon. You can rule however you want, but he says he's, you know, on a schedule where he stays up most of the night doing his work …

[Defendant]: Well, you know, I certainly don't mind taking him first thing if that will let him then go to bed and be done for the day, or you know, I'll wait for him as the last witness. …

And yes. I don't know how this hearing is going to go with Mr. Hall in jail. [] **I learned that today when they told me they brought him up -- over for today's hearing.  And I said, "I don't need him for today, I need him for tomorrow."**

So the show cause allegation are at least related apparently to the events for which he was arrested. **Although the complainant and victim is Toby Carpenter** in those, they're the same as the events that you allege are going to show cause. …

(*Transcript of February 4, 2021, Proceeding*, at 2-6) (emphasis added). [10]

**51.**   The foregoing communications between Defendant and Opposing Counsel were clearly *ex parte*. Admittedly, Defendant even prevented Complainant's attendance! (*Id*. at 6).

52.   Separately, Defendant's statement, "I learned that today when they told me" (*id*. at 5-6) clearly demonstrates that Defendant communicated *ex parte* with other persons or independently investigated facts in the matter. Likewise, Defendant's statement, "the complainant and victim is Toby Carpenter" (*id*. at 6) is evidence of the same, as that particular detail was never presented until Defendant presented it first; and, in fact, that detail **could not** have been presented earlier, because Complainant had only been arrested approximately eighteen (18) hours earlier.

53.   The above-described conduct, actions and/or inactions of Respondent as set forth herein in Count V constitute multiple violations of the Tennessee Code of Judicial Conduct, specifically: (**1**) RJC 1.1, (**2**) RJC 1.2, (**3**) RJC 1.3, (**4**) RJC 2.2, (**5**) RJC 2.3(A), (**6**) RJC 2.4(B), (**7**) RJC 2.5(A), (**8**) RJC 2.6(A), (**9**) RJC 2.7, (**10**) RJC 2.8(B), (**11**) RJC 2.9(A), (**12**) RJC 2.9(C) and (**13**) RJC 2.11(A), as set forth hereinafter in paragraph **Error! Reference source not found.**.

---

[10] *Transcript* not on appellate record; located in "Other" folder.

54. In addition, the above-described conduct, actions and/or inactions of Respondent as set forth herein in Count V constitute multiple violations of the Tennessee Rules of Professional Conduct, specifically: **(1)** RPC 3.4(a), **(2)** RPC 3.4(c), **(3)** RPC 8.4(a), **(4)** RPC 8.4(b) and **(5)** RPC 8.4(d), as set forth hereinafter in paragraph **Error! Reference source not found.**.

55. Further, the above-described conduct, actions and/or inactions of Respondent as set forth herein in Count V constitute criminal offense of Tenn. Code § 39-16-402(a)(1) and § 39-16-403(a)(2), as set forth hereinafter in paragraph **Error! Reference source not found.**.

56. On January 19, 2021, Opposing Counsel filed a "Motion for Contempt" (T.R. Vol. II, at 289-300) alleging Complainant had violated the indefinite *ex parte* order of protection.

57. Objectively, the merits of said Motion are irrelevant. Defendant's November 4, 2020, indefinite order of protection was clearly unlawful; and the various authorities (i.e., *Luker; Kite; Swonger*; Tenn. Code § 36-3-601, *et seq.*) are simply overwhelming.

58. As this Board has previously noted, "[o]nce the Tennessee Supreme Court has addressed an issue, its decision regarding that issue is binding on the lower courts." *Webb v. Nashville Area Habitat for Humanity*, 346 S.W.3d 422, 430 (Tenn. 2011).[11] *Kite, supra,* is binding; and because Defendant was required to dissolve the *ex parte* order of protection when Opposing Counsel repeatedly delayed, there was not a lawful order of protection for which Complainant could be held in contempt of. Regardless, the *indefinite ex parte* order of protection was clearly unlawful. "The threshold issue in any contempt proceeding is whether the order alleged to have been violated is 'lawful.' A lawful order is one issued by a court with jurisdiction over both the subject matter of the case and the parties." *Konvalinka v. Chattanooga-Hamil*, 249 S.W.3d 346, 355 (Tenn. 2008). "Subject matter jurisdiction is conferred by statute or the Tennessee Constitution; the

---

[11] *See* December 15, 2020, Public Release; File No. B20-8336.

parties cannot confer it by appearance, plea, consent, silence, or waiver." *Johnson v. Hopkins*, 432 S.W.3d 840, 843-44 (Tenn. 2013).

59.   The above-described conduct, actions and/or inactions of Respondent as set forth herein in Count VI constitute multiple violations of the Tennessee Code of Judicial Conduct, specifically: **(1)** RJC 1.1, **(2)** RJC 1.2, **(3)** RJC 2.2, **(4)** RJC 2.3(A), **(5)** RJC 2.5(A), and **(6)** 2.11(A), as set forth hereinafter in paragraph **Error! Reference source not found.**.

60.   In addition, the above-described conduct, actions and/or inactions of Respondent as set forth herein in Count VI constitute multiple violations of the Tennessee Rules of Professional Conduct, specifically: **(1)** RPC 3.4(c), **(3)** RPC 8.4(a), **(4)** RPC 8.4(b) and **(5)** RPC 8.4(d), as set forth hereinafter in paragraph **Error! Reference source not found.**.

61.   Further, the above-described conduct, actions and/or inactions of Respondent as set forth herein in Count VI constitute criminal offenses of Tenn. Code § 39-16-402(a)(1) and § 39-16-403(a)(1), as set forth hereinafter in paragraph **Error! Reference source not found.**.

62.   On January 20, 2021, Complainant, through Counsel, filed several motions (T.R. Vol. III, at 305-310) and a Notice of Hearing (T.R. Vol. III, at 303-304), setting said motions and others filed earlier by Complainant, *pro se*, for hearing on January 29, 2021.

63.   During the January 29, 2021, hearing, at the request of Opposing Counsel, Defendant refused to hear or consider Complainant's motions, citing Tenn. R. Civ. P. 6, *et seq.*, even though said motions had been properly noticed nine (9) days or months in advance:

> [Defendant]:  All right. Let's see. I have a number of notices. One filed 1/20 of '21, notice of hearing by Darren Berg for 1/29 to set an immediate trial date.
>
> …
>
> [Opposing Counsel]:   Your honor, can I interject? I don't think he has probably noticed the Court for any of his motions today.  …

…

[Defendant]: They're all filed on the 22cd and they were marked served on the 21st. What rule are you relying on if he sent notice on the 21st and it's not timely filed for the 29th?

[Opposing Counsel]: He didn't serve it on the 21st.

[Counsel for Complainant]: I did too. I mailed it and emailed it …

…

[Defendant]: Okay. Mr. Berg, Rule 6.04, a written motion and notice thereof under Rule 6.04 shall --mandatory-- be served not later than five days before the time specified for the hearing. That is five days under the computation of time. It doesn't include Saturdays or Sundays or the day of the even. And if it's done by mail, three additional days are added. **Your motion is not timed filed to be heard today.**

…

[Counsel for Complainant]: How is it not timely filed if I mailed it -- I mailed it last Thursday.

[Defendant]: **Mr. Toppenberg has not received it. You have no proof to the Court other than that**. …

…

So I guess we go to trial [] on Friday on the original petition."

(*Transcript of January 29, 2021, Proceeding*, at 2-16) (emphasis added). [12]

64. All of the motions filed by Complainant, *pro se*, had been noticed nearly two months in advance, "or as soon thereafter as the parties may be heard" (*see*, e.g., T.R. Vol. I, at 141).

65. After that hearing, Opposing Counsel filed a Notice of Hearing (T.R. Vol. III, at 319-320), setting three (3) motions (including the "Motion for Contempt" discussed earlier herein in Count VI) for hearing on February 5, 2021 -- the day of trial. Notably, however, under Defendant's

---

[12] *Transcript* not on appellate record; located in "Other" folder.

January 29, 2021, determination of Rule 6, *et seq.*, Opposing Counsel had not timely noticed said motions for hearing that date.

66. Thereafter (as discussed earlier herein in Count V), on February 2, 2021, Opposing Counsel filed a "Motion to Allow Expert Witness Testimony by Video;" and, the next day filed a "Notice of Expedited Hearing," setting said Motion for hearing the next morning.

67. During the February 4, 2021, *ex parte* hearing, --in stark contrast to his previous ruling on January 29, 2021-- Defendant stated the following:

> Pursuant to this Court's authority under the Rules of Civil Procedure, the Court deemed it necessary to have this hearing on an expedited basis, waived the five days notice …

(*Transcript of February 4, 2021, Proceeding* at 3).

68. It is important to note that Opposing Counsel had known of the trial date since the December 11, 2020, hearing. It was, in fact, Opposing Counsel who had requested continuance (*see* preceding paragraphs 42-44) to obtain additional time for their expert witness, and upon which the trial date was scheduled; thus, the necessity for an expedited hearing, particularly concerning the same expert witness said continuance was granted, remains questionable.

69. It is also important to note that neither Complainant nor Complainant's Counsel were aware of the February 4, 2021, *ex parte* hearing when it occurred. As stated earlier in paragraph 51, Defendant admittedly prevented Complainant's attendance.

70. Despite those facts, Defendant granted Opposing Counsel's Motion, notably waiving the same five (5) day notice requirement that Defendant had cited on January 29, 2020, while refusing to hear Complainant's motions (which, as stated above, were filed nine (9) days or months in advance). Complainant clearly had no notice and Opposing Counsel had no proof of notice; but unlike the favorability previously shown to Opposing Counsel ("Mr. Toppenberg has not received

it. You have no proof to the Court other than that.") (*Transcript of January 29, 2021, Proceeding*, at 10), when the same circumstance involved Complainant, Defendant did not care.

71. The following day, on February 5, 2021, both parties appeared for trial. Pursuant to Defendant's earlier statement, "we go to trial [] on Friday on the **original petition**" (*id.* at 16) (emphasis added), and not yet knowing of the *ex parte* hearing the previous day, Complainant did not anticipate any other matters. Suddenly, however, and instead of trial, Defendant --again and exclusively-- waived the five (5) day notice requirement for Opposing Counsel and allowed them to proceed with their Motion for Contempt. Notably, again, that Motion under Defendant's prior ruling was untimely noticed (*see* preceding paragraph 65). Regardless, Defendant thereafter allowed Opposing Counsel to control the proceeding:

> [Opposing Counsel]: … [R]ather than filing a second order of protection of all of those matters, I would like to supplement the petition …
>
> And then on the motion for contempt, we have a motion for contempt on the temporary order of protection. We're asking that that be heard today as well.
>
> …
>
> [Counsel for Complainant]: As we discussed last week in the virtual hearing, Your Honor, under Rule 6.01 of the Tennessee Rules of Civil procedure, computation of time, we may not include the date on which the notice was filed in this court.
>
> …
>
> It is not timely. Period. And, by the way, neither is his request, his motion filed this week, for a virtual expert. …
>
> …
>
> [Defendant]: The Court finds that effective notice of the notice for hearing on the motion to supplement has been effected and served.
>
> …

[Opposing Counsel]:  And so that I understand, you're going to reserve the motion for contempt until after we've considered --

…

[Defendant]:  All right. Well, you have a choice.  You can either [have] trial on the underlying order of protection, or we can try the show cause first.

(T.R. Vol. IV, at 5-28).

72.   Of course, Opposing Counsel opted to have their Motion for Contempt heard first. Subsequently, Defendant found and held Complainant in contempt. Complainant's Counsel then presented Complainant with two (2) options: Complainant could either continue to trial or seek bond; there was not enough time to do both, and he risked spending the weekend in jail. Naturally, Complainant chose the latter; and, foregoing the trial he had repeatedly requested (*see*, e.g., preceding paragraph 41), an agreed order of protection (T.R. Vol. III, at 343-351) was entered.

73.   Thereafter, without written motion, Opposing Counsel filed an "Affidavit of Attorney Fees and Expenses" (T.R. Vol. III, at 357-393) and later noticed a hearing for March 19, 2021 (T.R. Vol. III, at 402). Consequently, on March 11, 2021, Complainant's Counsel filed Notices of Deposition for Frontz and Opposing Counsel on March 18, 2021, with regard to the attorney fees sought. However, on March 17, 2021, Defendant, *sua sponte*, suddenly entered another Order (T.R. Vol. III, at 409-411), that was notably **<u>handwritten</u>**. Said Order quashed Complainant's Notices for not being "set 5 days in advance," even though, clearly, they were.

74.   On every opportunity, Defendant unilaterally applied the Rules of Civil Procedure to the determent of Complaint and favor of Opposing Counsel. (*See also* paragraph 88).

75.   The above-described conduct, actions and/or inactions of Respondent as set forth herein in Count VII constitute multiple violations of the Tennessee Code of Judicial Conduct, specifically: (**1**) RJC 1.1, (**2**) RJC 1.2, (**3**) RJC 2.2, (**4**) RJC 2.3(A), (**5**) RJC 2.5(A), (**6**) RJC 2.6(A),

**(7)** RJC 2.7, **(8)** RJC 2.8(B) and **(9)** RJC 2.11(A), as set forth hereinafter in paragraph **Error! Reference source not found.**.

76. In addition, the above-described conduct, actions and/or inactions of Respondent as set forth herein in Count VII constitute multiple violations of the Tennessee Rules of Professional Conduct, specifically: **(1)** RPC 3.2, **(2)** RPC 3.4(c), **(3)** RPC 8.4(a), **(4)** RPC 8.4(b) and **(5)** RPC8.4(d), as set forth hereinafter in paragraph **Error! Reference source not found.**.

77. Further, the above-described conduct, actions and/or inactions of Respondent as set forth herein in Count VII constitute multiple criminal offenses of Tenn. Code§ 39-16-403(a)(2), as set forth hereinafter in paragraph **Error! Reference source not found.**.

78. The February 5, 2021, agreed order of protection (T.R. Vol. III, at 343-351) was a final and appealable order. According to Defendant, "The Court [made] no findings of facts" (T.R. Vol. V, at 5); and "It's a final order [] subject to appeal." (T.R. Vol. V, at 10). Further, the Court's records specifically list said agreed order of protection as "Final Order." [13]

79. On February 9, 2021, Complainant timely filed his Notice of Appeal (T.R. Vol. III, at 354-355). As of that moment the Knox County Fourth Circuit Court no longer had jurisdiction of the underlying case. *State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996).

80. However, on February 16, 2021, Opposing Counsel filed the aforesaid "Affidavit of Attorney Fees and Expenses" and Notice of Hearing (*see* preceding paragraph 73), despite no accompanying written motion (*see* Tenn. R. Civ. P. 7.02). [14]

---

[13] *See* https://courtclerk.knoxapps.org/eCommerceClient/User/Search; docket no. "F-20-149454"

[14] "An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion." *Tenn. R. Civ. P. 7.02(1)*.

81.  During the March 19, 2021, hearing, because Defendant had quashed Complainant's earlier Notices of Deposition (*see* preceding paragraph 73), Opposing Counsel was placed under oath and, in pertinent part, testified the following:

> [Counsel for Complainant]: … Do you recall how much of this time entry of 3.25 hours was for your review of the correspondence between the Board and Mr. Carpenter?
>
> [Opposing Counsel]:  … Sorry. I don't recall.
>
> [Counsel for Complainant]: It says that you "Prepared a mid-month billing statement and sent it to the client." Do you actually bill your clients for preparing a bill?
>
> [Opposing Counsel]: Sometimes. Because it takes a good deal of my time.

(T.R. Vol. IX, at 47).

82.  Shortly after that testimony, the March 19, 2021, hearing was recessed; and on March 23, 2021, in pertinent part, Opposing Counsel further testified as follows:

> [Counsel for Complainant]: On December 14th, you have an entry, page 6 of that December 29th bill, for 3.00 hours at the top of the page. … Is the majority of that 3.00 hours the Board of Professional Responsibility time?
>
> [Opposing Counsel]: … yeah, the majority of the rest of that was just dealing with the Board complaint that your client had indirectly filed.
>
> [Counsel for Complainant]: The next day, 12-15, you've got 3.25 hours … How much of that 3.25 hour was dealing with the Board complaints?
>
> [Opposing Counsel]: You know, to answer that would just be speculation…
>
> …
>
> [Counsel for Complainant]: Okay. The same question with regard to 12-16 on the BPR matter. How much time was that spent out of the 4.50 hour for your time entry?
>
> [Opposing Counsel]: When I got the Board complaint, whatever day that was -- on the 14th, I prepared a response that same day, a little one-page response. So thereafter, it wasn't a lot of time spent on it other than, you know, there was correspondence back and forth with Doug Bergeron, who was the disciplinary

counsel. Obviously, the firm management was very concerned about Board complaints, for obvious reasons. So I'm sure I discussed that with them some.

(T.R. Vol. X, at 7-9).

83. It is important to note that all of the events presented herein Count VIII were after the Court lost jurisdiction, because Complainant had filed a Notice of Appeal. *See Pendergrass, supra.*

84. It is also important to note that a hearing on the petition for the *ex parte* order of protection never took place. As Defendant admitted, "[t]hat trial never occurred." (T.R. Vol. III at 422; *see also* T.R. Vol. V at 6). Pursuant to Tenn. Code § 36-3-617(a)(1), cost and attorney fees can only be assessed "after the hearing on the petition;" *id*. [15]

85. It is equally important to note that Opposing Counsel admittedly billed their client for time spent preparing that very bill; in other words, "taxes on top of taxes." Such billing is unethical and violative of RPC 1.5; and clearly such billing is not recoverable. Additionally, Opposing Counsel admittedly billed substantial hours for time spent dealing with the Board of Professional Conduct. Not only was such billing unfair to their client but clearly outside scope of the underlying case. *New v. Dumitrache*, 604 S.W.3d 1 (Tenn. 2020), which Complainant's Counsel cited (T.R. Vol. IX at 13) is binding and makes clear, "Tennessee Code Annotated section 36-3-617(a)(1) does

---

[15] "Notwithstanding any other law to the contrary, no domestic abuse victim, stalking victim, sexual assault victim, or victim of a felony offense under title 39, chapter 13, part 1, 2, 3, or 5 shall be required to bear the costs, including any court costs, filing fees, litigation taxes or any other costs associated with the filing, issuance, registration, service, dismissal or nonsuit, appeal or enforcement of an *ex parte* order of protection, order of protection, or a petition for either such order, whether issued inside or outside the state. If the court, **after the hearing on the petition**, issues or extends an order of protection, all court costs, filing fees, litigation taxes and attorney fees shall be assessed against the Defendant." *Tenn. Code § 36-3-617(a)(1)* (emphasis added).

not authorize an award of attorney's fees for matters unrelated to obtaining an order of protection." *Id.* at 22. Separately, Complainant is also immune pursuant to Tenn. R. Sup. Ct. 9 § 17. [16]

86. Last, it is important to note that Opposing Counsel admittedly billed the majority of their hours for time spent prosecuting the Motion for Contempt. (T.R. Vol. X, at 14-15). *New*, *supra*, also makes clear that "section 36-3-617(a)(1) did not authorize an award of attorney's fees incurred in successfully prosecuting a petition for criminal contempt alleging a willful violation of an order of protection." *Id.* Further, as Opposing Counsel testified, "[t]he Court ruled that if there was time spent on contempt, that it was not billable." (T.R. Vol. X, at 14).

87. Despite all of the facts in preceding paragraphs 83-86, on April 23, 2021, Defendant entered an Order (T.R. Vol. III, at 412-425) awarding Opposing Counsel $77,525.75 in attorney fees and cost. Said amount is clearly excessive; and, comparatively, on information and belief, similar orders of protection in the Knoxville area are routinely $5,000.00 to $10,000.00 at most. Notably, Defendant stated, "Mr. Hall's litigation choices should not preclude Ms. Frontz from receiving an award of attorney fees" (T.R. Vol. III, at 421); however, the record is clear that Complainant had absolutely no choice in the litigation.

88. In that same regard (that Complainant had no choice in the litigation), Opposing Counsel's March 23, 2021, "Statement" (Ex. Vol. III, Exhibit 1) and "Prebill" (Ex. Vol. III, Exhibit 2) are, perhaps, most instructive. Neither of those documents were ever filed; they are not on record with Knox County Fourth Circuit Court; and were notably transmitted to the Court of Appeals as exhibits. Likewise, Complainant was not afforded an opportunity to respond; and yet

---

[16] "Complainants and witnesses shall be immune from civil suit with respect to any communications to the Board, district committee members, Disciplinary Counsel or staff relating to attorney misconduct or disability or any testimony in the proceedings regarding the same, unless the information which the complainant or witness provides in such communication or such testimony is false and the complainant or witness had actual knowledge of the falsity." *Tenn. R. Sup. Ct. 9 § 17.*

Defendant used those documents to increase the original amount Opposing Counsel sought, from $64,807.00 (T.R. Vol. III at 357) to the final amount, $77,525.75, (T.R. Vol. III, at 424) awarded thereafter.

89.    The above-described conduct, actions and/or inactions of Respondent as set forth herein in Count VIII constitute multiple violations of the Tennessee Code of Judicial Conduct, specifically: **(1)** RJC 1.1, **(2)** RJC 1.2, **(3)** RJC 2.2, **(4)** RJC 2.3(A), **(5)** RJC 2.5(A), and **(6)** RJC 2.11(A), as set forth hereinafter in paragraph **Error! Reference source not found.**.

90.    In addition, the above-described conduct, actions and/or inactions of Respondent as set forth herein in Count VIII constitute multiple violations of the Tennessee Rules of Professional Conduct, specifically: **(1)** RPC 3.4(c), **(2)** RPC 8.4(a), **(3)** RPC 8.4(b) and **(4)** RPC 8.4(d), as set forth hereinafter in paragraph **Error! Reference source not found.**.

91.    Further, the above-described conduct, actions and/or inactions of Respondent as set forth herein in Count VIII constitute criminal offenses of Tenn. Code § 39-16-402(a)(1) and § 39-16-403(a)(2), as set forth hereinafter in paragraph **Error! Reference source not found.**.

## **CAUSES OF ACTION**

## **COUNT I – VIOLATION OF 42 U.S.C. § 1983**

92.    Plaintiff restates Paragraphs 1-93 in support of Count I.

93.    At all times material hereto Judge McMillan was acting under color of state law in his position as a Tennessee Judge for the Sixth Judicial District, Fourth Circuit Court.

94.    The acts of Judge McMillan as set forth herein are acts which are not within the purview of his judgeship as they are illegal and in violation of Plaintiff's constitutional rights to due process.

95.    Quite simply, a judge cannot break the law and expect immunity simply because he broke the law while in his capacity as a judge even if those illegal acts are performed while on the bench.

96.    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia. 42 U.S.C. § 1983 et seq.

97.    Moreover, the Fifth Amendment creates a number of rights relevant to both criminal and civil legal proceedings. In criminal cases, the Fifth Amendment guarantees the right to a grand jury, forbids "double jeopardy," and protects against self-incrimination. It also requires that "due process of law" be part of any proceeding that denies a citizen "life, liberty or property" and requires the government to compensate citizens when it takes private property for public use.

98.    Due Process - the Fifth Amendment says to the federal government that no one shall be "deprived of life, liberty or property without due process of law." The Fourteenth Amendment, ratified in 1868, uses the same eleven words, called the Due Process Clause, to describe a legal obligation of all states. These words have as their central promise an assurance that all levels of American government must operate within the law ("legality") and provide fair procedures.

99.    Any ex-parte hearing or lack of due process would render the judgment void on its face. Plaintiff enjoys the right to fair notice and a fair hearing which is guaranteed by this amendment (First) as incorporated in Amendment 14, or which is embodied in the concept of "liberty" as that

word is used in the Due Process Clause of the 14th Amendment and Equal Protection Clause of the 14th Amendment. <u>Mabra v. Schmidt</u>, 356 F Supp 620; DC, WI (1973).

100. Officials and judges are deemed to know the law and sworn to uphold the law; officials and judges cannot claim to act in good faith in willful deprivation of law, they certainly cannot plead ignorance of the law, even the Citizen cannot plead ignorance of the law, the courts have ruled there is no such thing as ignorance of the law <u>Cooper v. Aaron</u>, 358 U.S. 1, 78 S.Ct. 1401 (1958). "No state legislator or executive or judicial officer can war against the Constitution without violating his undertaking to support it.

101. Defendant has abrogated his oath not only to the Tennessee Constitution but also the United States Constitution as set forth herein by the shocking actions he has taken.

102. Indeed, while a judge performing judicial functions may enjoy immunity, denial of constitutional and civil rights are absolutely not a judicial function and conflicts with any definition of a judicial function.

103. In a limited government, limited by the constitution, the violation of citizens rights should never be justified due to overriding government goals or objectives – nor judicial immunity, and that no branch of government be allowed to extend its power beyond its legal limits. In a government by the people, it is a threat to an individuals' way of life to allow government actors to ignore the guidelines that define their power.

104. Applying the Stump Test to these set of facts this Defendant is clearly stripped of immunity.

  a. Was the averments set forth herein the kind of act the judge normally performs? No, the Defendant acted Ultra Vires after the order of protection expired (15 days) by operation of law.

b. Did the parties deal with the judge in his official capacity? No, the Judge had no jurisdiction over the Plaintiff once the order of protection expired and as a result all hearings conducted thereafter the Judge acted Ultra Vires stripping him of immunity.

105. Given the averments set forth herein it cannot be seriously argued that this Defendant is afforded any immunity as he acted in violation of multiple statutes and as such acted Ultra Vires.

106. The illegal acts of this Defendant set forth herein has damaged the Plaintiff and he is therefore entitled to damages under 42 U.S.C.

107. The illegal acts of this Defendant have caused and continue to cause Plaintiff mental and emotional anguish manifested by loss of financial well-being, sleepless nights, extreme stress due to fear the Defendant will put the Plaintiff back in jail and the inability to eat from the stress.

## PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff would request this Court issue process requiring this Defendant to Answer this Complaint. Plaintiff would also request this Court empanel a jury of twelve to try this case and at the conclusion of the same, award Plaintiff damages in the amount of $10,000,000, a declaratory judgment finding all of the Defendant's orders which were entered after the order of protection expired as set forth herein void as they violate not only Tennessee law but also the Tennessee Constitution and United States Constitution as the Defendant was acting Ultra Vires, for an award of attorney's fees, for court costs and discretionary costs.

Respectfully submitted,
s/Darren V. Berg
**Darren V. Berg**
Law Offices of Darren V. Berg
PO Box 453
Knoxville, TN 37901
865-773-8799

email: dberglawfirm@gmail.com

s/Russ Egli

**Russell Egli**
The Egli Law Firm
11109 Lake Ridge Drive, Floor 3
Concord, TN 37934
Telephone: 865-304-4125
Facsimile: 855-827-0624
Email: russegliatty@tds.net