| | |
|---|---|
| TRISTAN J. HALL, *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>GREGORY S. MCMILLAN, *et al.*, )<br>)<br>Defendants. )<br>) | 3:22-CV-00047-DCLC-DCP |

**ORDER**

This matter is before the Court on Defendants' Gregory S. McMillan, William C. Bright, Lauren N. Frontz, Kinnerly Montgomery & Finley ("KMF"), Kyle K. Perry, Kenneth R. Perry, Jacquelin R. Perry, Go Enterprises LLC, and Xelion LLC (collectively, "the Perrys") Motions to Dismiss [Docs. 28, 31, 53, 66, 69].[1] Plaintiffs Tristan J. Hall and Genuine Replacement Parts, LLC, have not responded to any of the motions. This matter is now ripe for resolution. For the reasons that follow, Defendants' motions are **GRANTED**.

**I.   BACKGROUND**

Hall operated a business that sold "Dyson [vacuum] replacement parts . . . ." [Doc. 6, ¶ 17]. Kyle Perry began working for Hall on February 1, 2019 [*Id.*, ¶¶ 19, 29-30]. Before hiring Perry, Hall had been charged in Kentucky with tampering with public records in violation of Ky. Rev. Stat. § 519.060 [*Id.*, ¶ 23; Doc. 10-4]. He was released on November 13, 2017, on a $10,000 bond [Doc. 6, ¶ 24]. He alleges that the Whitley County Circuit Court increased his bond to

---

[1]   Defendant Andrew Olson has not appeared in this case, and the record does not show that Plaintiffs served him with a summons in this matter. Thus, the Court's reference to "Defendants'" motions does not include Olson.

$100,000 without giving him notice and issued a bench warrant for his arrest [*Id.*]. Hall further alleges that on April 15, 2019, he was staying in Knoxville, Tennessee, at the Crown Plaza and advised Perry of his location [*Id.*, ¶ 25]. Hall asserts that Perry contacted law enforcement and told them about the unserved bench warrant for Hall's arrest and his location [*Id.*, ¶ 26]. That evening, officers arrested Hall and extradited him to Kentucky where he was held without bond [*Id.*, ¶¶ 26-27]. While Hall was incarcerated, Perry allegedly entered Hall's business's storage unit, stole some of his Dyson replacement parts, and used Hall's "trade secrets" to begin operating a competing business, which eventually included Xelion, LLC, and Go Enterprises, LLC [*Id.*, ¶¶ 93-94]. Hall claims that when he learned of Perry's theft of his property, he decided to "take a plea deal instead of contesting the charges in Kentucky, in effort to return to Knoxville and regain control of his business." [*Id.*, ¶¶ 29-30]. Perry's parents, Kenneth and Jacqueline Perry, supposedly "were aware of their son's . . . unlawful activities . . . and assisted [him] to misuse [] Hall's trade secrets and proprietary information." [*Id.*, ¶¶ 33, 36]. In November 2019, Hall filed a lawsuit against the Perrys in Knox County Chancery Court [*Id.*, ¶ 38].

In June 2020, Hall met Lauren Frontz [*Id.*, ¶ 53]. The following month, Frontz reported Hall to Tennessee law enforcement for "stalking and harassing her" and filed a petition for an order of protection against him [*Id.*, ¶¶ 63, 70]. Knox County Magistrate Richard Major issued a temporary *ex parte* order of protection in August 2020, ordering Hall to stay away from Frontz [*Id.*, ¶ 70]. Attorneys Doug Toppenberg and Toby Carpenter represented Frontz in that matter. [*Id.*, ¶ 106]. In December 2020, Carpenter reported to law enforcement that Hall was attempting to extort him by filing a complaint with the Tennessee Board of Professional Responsibility ("BPR"), the organization that oversees attorney discipline [*Id.*, ¶ 132]. A Tennessee grand jury ultimately indicted Hall for extortion, harassment, aggravated stalking, and other offenses

committed against both Frontz and Carpenter [*Id.*, ¶¶ 149, 188; Docs. 10-65; 23-3, pgs. 2, 4, 73-76, 78-80, 295-98]. Between April and May 2021, Frontz reported four occasions to law enforcement where Hall purportedly harassed her and vandalized her property [Doc. 6, ¶¶ 180-87]. In May 2021, a grand jury indicted Hall for violating the order of protection and for vandalism [*Id.*, ¶ 188]. According to Hall, Frontz accused him of those acts "only" because of a "conspiracy" with the Perrys [*Id.*, ¶ 79].

Hall alleges that the Perrys "conspired with Lauren Frontz" to file false accusations against him in an effort to prevail in the Chancery Court lawsuit that Hall filed, so the Perrys could "continue to use" Hall's "stolen trade secrets and proprietary information." [*Id.*, ¶¶ 79-81]. Importantly, Hall's First Amended Complaint does not include factual allegations that detail any communications between the Perrys and Frontz or that Frontz knew anything about the Chancery Court case. Further, the First Amended Complaint contains no allegation that Frontz knew anything about Hall's business or the fact that Perry previously worked for him.

According to Hall, when Frontz initiated "multiple false legal actions and 911 calls against [him]," Kenneth and Jacquelyn Perry moved to Palm Harbor, Florida [*Id.*, ¶ 91-92]. After that, Hall alleges Frontz "began making multiple trips to Florida." [*Id.*]. Notably absent are any allegations that Kenneth and Jacquelyn Perry ever had contact with Frontz in Florida.

Although the First Amended Complaint does not mention contact between Kenneth and Jacquelyn Perry and Frontz, security-camera footage from a parking garage in Knoxville showed Frontz getting out of a car allegedly driven by Kyle Perry at approximately 12:30 a.m. on May 1, 2021 [*Id.*, ¶¶ 184-86]. About an hour later, Frontz called the Knoxville Police Department ("KPD") to report vandalism to her own vehicle [*Id.*]. The security-camera footage supposedly

shows scratches on Frontz's car before she called 911 [*Id.*]. Hall does not allege that Kyle Perry or his parents had anything to do with Frontz's reports to law enforcement [*See Id.*, ¶¶ 183-88].

In March 2022, Hall made a Tennessee Open Records request to the Knox County Law Director's Office [*Id.*, ¶ 199]. A few days later, William C. Bright, an assistant district attorney, presented a search warrant to a judge for a search of Hall's residence, and Andrew Olson, a KPD officer, executed that search warrant [*Id.*, ¶¶ 202, 207-11]. According to Hall, Gregory S. McMillan, a judge for the Fourth Circuit Court of Knox County, General Bright, Frontz, Officer Olson, and Carpenter allegedly "devised a plan to retaliate" against Hall for making a Tennessee Open Records request and filing this lawsuit [*Id.*, ¶ 200]. Further, Hall alleges that Judge McMillan signed the search warrant that Officer Olson executed to harm Hall and prevent him from paying his attorneys [*Id.*, ¶ 206].

Subsequently, Judge McMillan entered orders of protection against Hall, and he ordered Hall to pay attorneys' fees of almost $80,000 because of Hall's litigation tactics [*See* Doc. 10-69]. According to Hall, those orders violated his due process and Fifth Amendment rights [Doc. 6, ¶¶ 96-99, 109-11, 116-17, 120-26, 145-58, 171-75, 177-78, 194-94]. Hall appealed one of the orders of protection and the fee award, which was affirmed by the Tennessee Court of Appeals. *See Frontz v. Hall*, No. E2021-00154-COA-R3-CV, 2022 WL 2161095, at *1-*8 (Tenn. Ct. App. June 15, 2022). Hall then sought leave to appeal to the Tennessee Supreme Court, which was denied [*See* Doc. 69-1].

In the Knox County Chancery Court case that Hall filed against the Perrys, the Chancery Court sanctioned Hall for violating a court order [Doc. 69-2]. The Chancery Court found that Hall's violations were "knowing and willful," and that he had shown "a flagrant disregard of [the Chancery] Court's authority and abuse of the court system." [*Id.*, pg. 5].

4

Importantly, Hall did not name Carpenter as a defendant in the instant suit, even though he accused Carpenter of impropriety related to his actions representing Frontz. Instead, Hall named KMF as a defendant, hoping to hold it "vicariously liable" for Carpenter's alleged actions [Doc. 6, ¶¶ 105-07]. Hall also does not state whether any of the criminal cases against him have terminated in his favor in his First Amended Complaint. Additionally, Hall does not assert that any of the Perrys were aware of the other Defendants' alleged "plan" or that the Perrys communicated, or reached an agreement, with Officer Olson, Judge McMillan, or any other state agent or official.

Plaintiffs bring claims for First Amendment retaliation under 42 U.S.C. § 1983 (Count 1), "violation of 42 U.S.C. § 1983" (Count 2), conspiracy to violate § 1983 under 42 U.S.C. §§ 1985 and 1986 (Count 3), and malicious prosecution and abuse of process under Tennessee law [Doc. 6, ¶¶ 213-49]. Defendants now move to dismiss Plaintiffs' First Amended Complaint [Docs. 28, 31, 53, 66, 69]. Plaintiffs have failed to respond. This matter is now ripe for resolution.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires the complaint to contain a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss for lack of standing is properly characterized as a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008). "[W]here subject matter jurisdiction is challenged under Rule 12(b)(1) . . . the *plaintiff* has the burden of proving jurisdiction in order to survive the motion." *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).

"A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of the subject matter

5

Case 3:22-cv-00047-DCLC-DCP   Document 72   Filed 02/21/23   Page 5 of 15
PageID #: 2388

jurisdiction (factual attack)." *Cartwright v. Garner*, 751 F.3d 752, 759-60 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). "A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis," while "[a] factual attack challenges the factual existence of subject matter jurisdiction." *Id.* This distinction is important because if the defendant makes a facial attack, the Court must take all of the allegations in the complaint as true to determine "whether the plaintiff has *alleged* a basis for subject matter jurisdiction." *Id.* (emphasis added). But if the defendant makes a factual attack, the Court may consider and weigh evidence, including evidence outside of the pleadings, to determine whether the plaintiff has carried the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936).

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) eliminates a pleading or portion thereof that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) requires the Court to construe the allegations in the complaint in the light most favorable to the plaintiff and accept all the complaint's factual allegations as true. *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990). The Court may not grant a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990). The Court liberally construes the complaint in favor of the opposing party. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).

To survive dismissal, the plaintiff must allege facts that are sufficient "to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that

6

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. The court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), and dismissal is appropriate "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). In addition to the allegations contained in the complaint, a court may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint" in ruling on a 12(b)(6) motion to dismiss. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (citation omitted). The Court also may take "judicial notice of another court's opinion not for the truth of the facts recited therein, but for the existence of the opinion." *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008).

### III. ANALYSIS

As an initial matter, the Court notes that Plaintiffs have failed to respond to Defendants' motions to dismiss. The Court deems a failure to respond to motions to dismiss as a waiver of opposition to those motions. *Elmore v. Evans*, 449 F.Supp. 2, 3 (E.D. Tenn. 1976), *aff'd*, 577 F.2d 740 (6th Cir. 1978). Plaintiffs waiver of opposition alone is sufficient to grant Defendants' motions and dismiss Plaintiffs' First Amended Complaint. *See id.*; *see also Scott v. State of Tenn.*, No. 88-6095, 1989 WL 72470, at *2 (6th Cir. July 3, 1989). Nonetheless, the Court will address the merits of each motion to dismiss in turn.

**A. Judge McMillan's and General Bright's Motions to Dismiss [Docs. 31, 53]**

Judge McMillan and General Bright argue that they are entitled to Eleventh Amendment immunity against Plaintiffs' claims against them in their official capacities [Docs. 32, pgs. 5-6; 54, pgs. 8-10]. Eleventh Amendment immunity is "a true jurisdictional bar that . . . must be decided

7

before the merits." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015). A suit against a state official in his official capacity is, in reality, a suit against the state itself. *See Cady v. Arenac Cnty.*, 574 F.3d 334, 342 (6th Cir. 2009); *see also Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).[2] Therefore, each of Plaintiffs' claims against Judge McMillan and General Bright are properly regarded as claims against the State of Tennessee. "States have two distinct federal-law immunities from suit." *PennEast Pipeline Co., LLC v. New Jersey*, 141 S. Ct. 2244, 2264 (2021) (Gorsuch, J., dissenting) (explaining the difference between immunity derived from the structure of the Constitution ("structural immunity" or sovereign immunity) and immunity derived from the text of the Eleventh Amendment ("Eleventh Amendment immunity")). This case falls squarely within the "ironclad rule" of Eleventh Amendment immunity. *Id.*

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State[.]" U.S. Const. amend. XI. In other words, the immunity guaranteed by this Amendment deprives federal courts of subject-matter jurisdiction when a citizen sues his own state, unless the state waives its immunity or Congress abrogates that immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984). Plaintiffs have sued the State of Tennessee through Judge McMillan and General Bright in their official capacities. Therefore, Eleventh Amendment immunity applies, and the Court lacks subject matter jurisdiction over Plaintiffs' claims against Judge McMillan and General Bright in their official

---

[2] Although Judge McMillan argues he is also entitled to judicial immunity for the claims brought against him in his individual capacity, Plaintiffs did not specify in what capacity they were suing him, and it is presumed that each of Plaintiffs' claims are brought against him in his official capacity. See *Northcott v. Plunkett*, 42 F. App'x 795, 796 (6th Cir. 2002) (citing *Wells v. Brown*, 891 F.2d 591, 593 (6th Cir. 1989)).

8

capacities. Accordingly, Judge McMillan's and General Bright's Motions to Dismiss [Doc. 31, 53] are **GRANTED** as to Plaintiffs' claims against them in their official capacities.

Judge McMillan and General Bright next argue that they are entitled to absolute judicial and prosecutorial immunity, respectively, for Plaintiffs' claims against them in their individual capacities [Docs. 32, pgs. 6-9; 54, pgs. 10-14]. Beginning with prosecutorial immunity, a prosecutor "enjoys absolute immunity from § 1983 suits for damages when he acts within the scope of his prosecutorial duties." *Imbler v. Pachtman*, 424 U.S. 409, 426–28 (1976). Absolute prosecutorial immunity also protects prosecutors from state tort claims. *See Shell v. State*, 893 S.W.2d 416, 421 (Tenn. 1995); *Willet v. Ford*, 603 S.W.2d 143, 147 (Tenn. Ct. App. 1979). Indeed, the initiation and prosecution of a lawsuit on behalf of the government fall squarely within prosecutorial functions. *See id.* at 431. Absolute prosecutorial immunity extends to actions such as preparing and filing complaints, pretrial negotiations, seeking injunctive relief, managing evidence, and—importantly—presenting a search warrant in court. *Id.* at 413; *Cady*, 574 F.3d 334, 341 (6th Cir. 2009); *Cooper v. Parrish*, 203 F.3d 937, 947 (6th Cir. 2000); *Lomaz v. Hennosy*, 151 F.3d 493, 498 (6th Cir. 1998); *Shoultes v. Laidlaw*, 886 F.3d 114, 118 (6th Cir. 1989).

Here, Plaintiffs allege General Bright violated their rights by asking Officer Olson to obtain a search warrant and then presenting that search warrant in court. [Doc. 6, ¶¶ 202, 207-11]. Absolute prosecutorial immunity bars suit against General Bright based on those actions. *See Lomaz*, 151 F.3d at 498. Accordingly, all claims against General Bright in his individual capacity are **DISMISSED**.

As to judicial immunity, a judge performing his judicial functions is absolutely immune from suits seeking monetary damages, including suits under § 1983. *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991). Absolute judicial immunity applies even if a judge acts erroneously, maliciously, or

9

corruptly in performing his judicial functions. *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967); *see also Mireles*, 502 U.S. at 11–12 (reasoning that the only exceptions to judicial immunity are when a judge is not performing a judicial function and when the judge acts in the complete absence of jurisdiction). And as with prosecutorial immunity, absolute judicial immunity applies to state law claims as well. *Graham v. Dodson*, 830 S.W.2d 70, 71 (Tenn. Ct. App. 1991). Here, Plaintiffs take issue with Judge McMillan's performance of his judicial function [Doc. 6, ¶¶ 96-99, 109-11, 116-17, 120-26, 145-58, 171-75, 177-78, 194-94]. They complain of how he presided over petitions for orders of protection and handled discovery disputes, motions to quash, motions for attorney's fees, and complaints before the BPR [*Id.*]. Those actions are all traditional judicial functions. Thus, absolute judicial immunity bars Plaintiffs' claims against Judge McMillan in his individual capacity and are **DISMISSED**.

Accordingly, Judge McMillan's and General Bright's motions [Docs. 31, 53] are **GRANTED**, and all of Plaintiffs' claims against those Defendants are **DISMISSED**

### B. KMF's, the Perry's, and Frontz's Motions to Dismiss [Docs. 28, 66, 69]

#### 1. Plaintiffs' § 1983 claims against KMF, the Perrys, and Frontz

KMF and the Perrys contend that they are not state actors and that Plaintiffs have not alleged a conspiracy as to them with specificity [Docs. 67, pg. 6; 71, pg. 9]. Frontz, for her part, moves *pro se* to dismiss Plaintiffs' claims against her and asserts that Plaintiffs only included her in their First Amended Complaint as a way to harass her for seeking an order of protection against Hall [Doc. 28, pgs. 1-4]. She contends that Plaintiffs failed to state a claim against her [*Id.*]. To assert a valid § 1983 cause of action, a plaintiff must demonstrate that "1) [the plaintiff] was deprived of a right secured by the Constitution or laws of the United States and that 2) the deprivation was caused by someone acting under color of state law." *Rodgers v. Banks*, 344 F.3d

10

587, 595 (6th Cir. 2003) (citing *Perry v. McGinnis*, 209 F.3d 597, 603 (6th Cir. 2000) (internal citations omitted)).

Here, Plaintiffs have not pleaded facts to show that KMF, the Perrys, or Frontz are state actors, a necessary element to establish a § 1983 claim.[3] *Rodgers*, 344 F.3d at 595; *see also Brotherton v. Cleveland*, 173 F.3d 552, 567 (6th Cir. 1999). Plaintiffs allege only that those Defendants conspired with each other to violate their rights, but none of those Defendants are state actors such that an alleged conspiracy between them would establish state action. KMF, the Perrys, and Frontz are all private entities that took various actions in response to Hall. That those actions may have coincided with separate state action regarding Hall's criminal cases is insufficient to show that KMF, the Perrys, and Frontz conspired with the state actors to violate Plaintiffs' rights. Accordingly, Plaintiffs' § 1983 claims against KMF, the Perrys, and Frontz are **DISMISSED**.

## 2. Plaintiffs' §§ 1985 and 1986 claims against KMF, the Perrys, and Frontz

KMF and the Perrys next argue that Plaintiffs have not alleged a conspiracy with specificity to support a claim under § 1985(3) or that they were a member of a protected class, which is a prerequisite for claims sunder § 1985(3) [Docs. 67, pgs. 9-10; 71, pgs. 14-15].[4] To establish a claim under § 1985(3), a plaintiff must allege the defendants engaged in a conspiracy to deprive him of either equal protection of the laws or equal privileges and immunities under the laws.

---

[3] In its motion to dismiss, KMF also argues that it cannot be held vicariously liable for Toppenberg's or Carptenter's alleged actions under § 1983 [Doc. 67, pgs. 5-6]. KMF is correct that it cannot be held vicariously liable under § 1983 for Toppenberg's or Carptenter's alleged actions. *Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012).

[4] Plaintiffs fail to state which subsection of § 1985 they allege Defendants violated. The First Amended Complaint does not allege that KMF, the Perrys, or Frontz were officers of the United States or conspired to prevent an officer from performing his duties and, thus, have not stated a claim under § 1985(1). 42 U.S.C. § 1985(1). Further, Plaintiffs do not allege KMF, the Perrys, or Frontz prevented them or anyone else from participating in a court proceeding and cannot state a claim under § 1985(2) as such. *Id.* § 1985(2). Accordingly, the Court analyzes Plaintiffs' claims under § 1985(3) only.

11

*United Bhd. Of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 828–29 (1983). A plaintiff must further allege the defendants took an act in furtherance of the conspiracy and that the plaintiff was injured by that act. *Id.* Importantly, the plaintiff must show that the defendants shared a "common discriminatory objective." *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 368 (6th Cir. 2012). The defendants must have been motivated by some "class-based, invidiously discriminatory animus." *Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 994 (6th Cir. 1994).

Here, Plaintiffs fail to state a claim against KMF, the Perrys, or Frontz for violating § 1985(3) because their allegations of a conspiracy between Defendants are conclusory and unsupported by the facts alleged in the First Amended Complaint. Plaintiffs complain of a series of actions taken independently by KMF, the Perrys, and Frontz in response to Hall's own actions. The only common link between Defendants' actions is that they affected Hall. But just because those actions impacted Hall does not show a conspiracy. Plaintiffs also have not alleged that they were part of a protected class and discriminated against because of their membership in such a class. Indeed, the First Amended Complaint asserts that KMF, the Perrys, and Frontz were motivated by a mix of greed, jealousy, and aggrievement. Those motivations are not based on Plaintiffs' membership in a protected class. Thus, Plaintiffs cannot state a claim for relief under § 1985(3). Because Plaintiffs cannot state a claim under § 1985, they necessarily cannot state a claim under § 1986. *Braley v. City of Pontiac*, 906 F.2d 220, 227 (6th Cir. 1990). Accordingly, Plaintiffs' claims against KMF, the Perrys, and Frontz under §§ 1985 and 1986 are **DISMISSED**.

### 3. Plaintiffs' malicious prosecution and abuse of process claims against KMF, the Perrys, and Frontz

Next, KMF and the Perrys contend that Plaintiffs cannot establish their malicious prosecution claim because they have not shown that the criminal cases mentioned in the First

Amended Complaint terminated in Plaintiffs' favor [Docs. 67, pg. 12; 71, pgs. 17]. A plaintiff cannot bring a malicious prosecution claim, under either § 1983 or state law, until the underlying charges have been resolved in the plaintiff's favor. *Heck v. Humphrey*, 512 U.S. 477, 474 (1994); *see also Fox v. DeSoto*, 489 F.3d 227, 235 (6th Cir. 2007). Here, KMF and the Perrys are correct that one of the criminal proceedings that is the subject of Plaintiffs' First Amended Complaint has resulted in Hall's conviction. Hall does not note whether the other criminal case mentioned in his First Amended Complaint resolved in his favor. Because Hall cannot establish a favorable termination of those criminal proceedings at this stage, *Heck* bars Plaintiffs' claim for malicious prosecution under both § 1983 and state law. *Heck*, 512 U.S. at 474; *Fox*, 489 F.3d at 235. Thus, Plaintiffs' malicious-prosecution claim against KMF, the Perrys, and Frontz is **DISMISSED**.

Lastly, KMF and the Perrys assert that Plaintiffs cannot show an abuse of process because they have not alleged an ulterior motive or identified an abusive act in the use of process [Docs. 67, pg. 14; 71, pgs. 16-17]. Under Tennessee law, a plaintiff must show the existence of an ulterior motive and "an act in the use of process other than such as would be proper in the regular prosecution of the charge." *Givens v. Mullikin*, 75 S.W.3d 383, 400 (Tenn. 2002). Here, Plaintiffs cannot maintain their abuse-of-process claim because they have not identified any abusive act in the use of process. *See id.* The proceedings that are at the heart of Plaintiffs' First Amended Complaint occurred in the ordinary course of litigation. Hall himself filed suit against the Perrys in the Knox County Chancery Court [Doc. 6, ¶ 38]. And as noted above, the criminal cases against Hall have not terminated in his favor such that the Court could infer an abuse of process in those cases. Further, the Tennessee Court of Appeals affirmed Judge McMillan's actions in *Frontz v. Hall*. Plaintiffs' claim for abuse of process against KMF, the Perrys, and Frontz is **DISMISSED**.

Accordingly, KMF's, the Perry's, and Frontz's motions [Docs. 28, 66, 69] are **GRANTED**, and all of Plaintiffs' claims against those Defendants are **DISMISSED**.

### C. Claims against KPD Officer Andrew Olson

Federal Rule of Civil Procedure 4(m) requires a plaintiff to perfect service on a defendant "within 90 days after the complaint is filed." Fed. R. Civ. P. 4(m). If a defendant is not served within that time period, "the [C]ourt—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant." *Id.* On the showing of good cause for a failure to serve by the plaintiff, the Court must extend the time to serve a defendant for an appropriate period. *Id.* But the absence of a showing of good cause for failing to timely serve a defendant mandates dismissal. *Habib v. General Motors Corp.*, 15 F.3d 72, 73 (6th Cir. 1994). Here, the record does not show that Plaintiffs ever served Officer Olson with a summons in this matter. Plaintiffs did effect service on the other Defendants and even perfected service on Frontz when the initial summons was returned unexecuted as to her [*See* Docs. 15, 18]. But Plaintiffs have failed to serve Officer Olson. The Court conducted a status conference in this matter on November 14, 2022, and noted Officer Olson's failure to appear in this matter, but Plaintiffs' counsel did not attend that conference to offer a reason for Plaintiffs' failure to serve Officer Olson [*See* Docs. 57, 58]. Plaintiffs' failure to serve Officer Olson is reason enough to dismiss Plaintiffs' claims against him. *See* Fed. R. Civ. P. 4(m).

Even if Plaintiffs properly served Officer Olson, their failure to appear for a duly noticed hearing, failure to respond to the several motions to dismiss in this case, and failure to correct a deficient notice of voluntary dismissal [*See* Docs. 63, 64] establish that they have failed to prosecute this matter. *Id.* 41(b). Indeed, Plaintiffs' deficient notice of voluntary dismissal indicates that that they no longer wish to litigate this matter [Doc. 63]. Plaintiffs' failure to

14

prosecute this action, then, warrants dismissal. *Id.*; *see also Rogers v. City of Warren*, 302 F. App'x 371, 375 n.4 (6th Cir. 2008) (concluding that "it is well-settled that the district court can enter a sua sponte order of dismissal under Rule 41(b)."). Because Plaintiffs have failed to prosecute this matter, Plaintiffs' claims against Officer Olson are **DISMISSED**.

## IV. CONCLUSION

For the reasons stated, Defendants' Motions to Dismiss [Docs. 28, 31, 53, 66, 69] are **GRANTED**. Plaintiffs' First Amended Complaint is **DISMISSED WITH PREJUDICE**. A separate judgment shall enter.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge